UNITED STATES v. LAHEY & DUNCAN.

(Circuit Court, S. D. New York. June 1, 1904.)

No. 3,453.

1. CUSTOMS DUTIES—INVOICE VALUE—COMMISSIONS—FUNCTIONS OF COLLECTOR OF CUSTOMS.

In finding the invoice value of imported merchandise, under section 7, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 134 [U. S. Comp. St. 1901, p. 1892], a collector of customs has no right, after the appraiser has appraised the merchandise and marked an item of commissions as nondutiable, to include such item in the invoice value, and assess duty thereon, upon a mere inspection of the invoice, without inquiry or evidence to justify such action.

On Application for a Review of a Decision of the Board of General Appraisers.

The decision under review (G. A. 5,472, T. D. 24,780) reversed the assessment of duty by the collector of customs at the port of New York on merchandise imported by Lahey & Duncan. The opinions filed by the board read as follows:

Somerville, General Appraiser. This protest is directed against the assessment of duty by the collector of customs on an item of so-called "commissions" stated on the invoice. The goods consist of laces, the gross value of which is stated to be £508 10s. 7d. The item of "commission," amounting to £4 12s. 8d. (equivalent to about 2½ per cent. on the invoice value), is claimed to be nondutiable, and was deducted on entry. The local appraiser, in ascertaining the market value of the goods, sustained the entered value as correct, holding, in effect, that the item of commission constituted no part of the market value of the goods in the principal markets of the country from which the goods were exported at the time of exportation. No reappraisement was called for either by the collector or the importers; but the collector, on liquidating the entry, added the item of commission to the entered and appraised value of the merchandise, and assessed duty on the total value thus found, citing treasury decision 23,716 of May 14, 1902, in support of his action.

The report of the collector shows that this addition was made upon a mere inspection of the invoice, and upon the theory that the invoice itself failed to show that the commission was paid to a commissionnaire, or to a person other than the seller of the merchandise. He accordingly treated the so-called commission as part of the invoice value that was subject to duty. We think it entirely clear that the ground assigned by the collector for this action is unsupported in law. It is the universal practice of shippers and importers in making out invoices and entries to specify items of commission without stating the name of the person to whom such commission was paid; and there seems to be no law or regulation which requires any one to make such statement. As we have often observed, the collector is invested with full power to cite importers

before him and examine them under oath touching any matter connected with importations of merchandise. Section 16, Act June 10, 1890, c. 407, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1935]. It is unreasonable for him to "overturn the invoices and oaths of importers" without reasonable and probable grounds for so doing. Greely v. Thompson, 10 How. 239, 13 L. Ed. 397. It does not appear from the record in this case, and we cannot infer, in the absence of evidence, that he examined under oath either the importers or any other witnesses as to the character of these so-called commissions, or made any inquiry as to whom they were paid to, or obtained any evidence which would justify him in finding that the item did not represent an actual commission.

The importers claim that duty has been assessed without authority of law on a value greater than the dutiable value of the merchandise as defined by the customs laws, and they insist that the item of commissions was no part of the foreign market value of the goods, and is therefore nondutiable. It has uniformly been decided by the courts and by this board that bona fide commissions paid to a broker or agent as compensation for services in making purchases of goods are nondutiable, and on this point there is no controversy in the present case. U. S. v. Herrman, 91 Fed. 116, 33 C. C. A. 400; U. S. v. Kenworthy, 68 Fed. 904, 16 C. C. A. 61. As observed by this board in Re Smith & Sons, G. A. 5,443, T. D. 24,721: "Of course, the seller of goods can make no charge for his services in making his own sale, and a so-called commission charged by him is not really a commission at all." It was said in U. S. v. Kenworthy. supra: "Undoubtedly it is the right and duty of those appointed and empowered to pronounce judgment upon the question of dutiable valuation to make such inquiry; and when, as the result of such investigation, the designated officials find that an alleged commission has no proper relation whatever to the importation, but that it is really a part of the price of the merchandise, and they take that fact into consideration in making their appraisement, they do not transcend their rightful authority." In U. S. v. Herrman, supra, it was held by the Circuit Court of Appeals: "The customs administrative act of 1890 makes the market value or wholesale price of merchandise, at the time of exportation to the United States, in the principal markets of the country from which it has been imported, the criterion of the dutiable value; and there is no authority for adding a commission paid by the importer to such market value." In making a reappraisement the Board of General Appraisers, sitting as a board of reappraisement, allowed a commission of only 2½ per cent., upon the theory that this was the usual commission in similar cases, and therefore constituted no part of the market value of the goods at the time of exportation. This allowance was sustained by the court, with the observation by Judge Wallace that: "If the appraisers, instead of adding to the invoice price 2½ per cent., 'as an item improperly deducted as commission,' had added 5 per cent., they would have been quite justified in doing so by the evidence." The case of U. S. v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644, was commented on as follows: "In the Passavant Case the invoices stated certain prices as the net invoice value of the imported merchandise. They also stated certain additional sums under the heading 'German duty.' The appraiser decided that the dutiable value of the merchandise equaled the sum of the net invoice value, and the 'German duty' was an element of the market value or wholesale price in the foreign market. The decision proceeded upon the ground that, if it had been added by the appraiser to that price or value, the appraisement would have been open to impeachment; but as it was not, and was included only as an item entering into the estimate of the price or value, the appraisement was conclusive. The court used this language: 'The appraiser found, as a matter of fact, that the market value in Germany was equal to the invoice price plus the home duty, but he did not, therefore, include that item as a substantive item, independent of the market value, and add it thereto to make the dutiable value, though in ascertaining the market value in Germany he properly recognized the fact that that duty formed part of the purchase price in the markets of that country.'" We construe this decision to be an authority for the proposition that the question of allowing or disallowing an item of commission is one purely of appraisement, and is not dependent simply upon a construction of the invoice. In other words, if an item on an invoice claimed to be a commission is in fact a part of the market value

of the goods as ascertained by the appraising officers, it is not a commission within the meaning of the law. If, however, the contrary is true, and the commission constitutes no part of the market value, it must be held to be nondutiable, and the collector would have no right to add it to the appraised value. There are many so-called charges, such as ocean freight, export duty, insurance, and like items, which are not subjects of appraisement, and may be added by the collector as a part of the dutiable value of imported merchandise, whenever so provided by statute. See section 19, Act June 10, 1890, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924]; In re Shillito Co., G. A. 5,170, T. D. 23,851, and court decisions there cited.

The next inquiry relates to the right of the collector on a mere construction of the invoice to add the item of commissions as a dutiable item, when it was claimed to be nondutiable, and had been described as a commission on the face of an invoice duly verified under oath. This point would seem to have been settled by high authority, namely, the decision of Judge Story in the case of U. S. v. May, 26 Fed. Cas. 1224, where he used the following language: "Where the invoice contains a charge of commissions in the usual cases, this is prima facie sufficient for the importer. If the charge is supposed to be wrong, the burden of disproving it rests on the government. It is not to be presumed that the importer will swear to a charge that is known to him to be incorrect, and when he offers to take the usual oath as to his invoice he affirms in the most solemn manner its genuineness and verity. As to the form in which the invoice is made out, it is conclusive upon no person. If anything is proved by it, it must be taken altogether." Of course, the statements made in any invoice, especially as to value, are open to explanation by competent evidence, and this proposition is nowhere controverted. In Arthur v. Goddard, 96 U. S. 145. 24 L. Ed. 814, the importers, on entry, deducted as nondutiable a discount of 2 per cent. from the gross value or price of the goods as shown on the face of the invoice, with the notation: "Terms cash; if not paid, interest to be added at the rate of 6 per cent." As cash had not been paid, the 2 per cent. discount was disallowed by the appraisers. The collector, in fixing the dutiable value of the goods, disallowed the discount, and assessed duty upon the gross sum. The Supreme Court held that this was an improper construction of the invoice, and that the gross value, less the discount, was the proper invoice value, and that duty on the amount of the 2 per cent. discount was improperly exacted. The law at that time was the same as that now existing, in that it required that duty should not be assessed on an amount less than the invoice or entered value. In another reported case, where both the collector and appraiser had raised the "invoice value" by adding certain charges which were properly nondutiable, their action was reversed upon the ground that it was a "palpable misunderstanding of the invoice." Vaccari v. Maxwell, 3 Blatchf. 368, Fed. Cas. No. 16,810. In Gray v. Lawrence, 3 Blatchf. 117, Fed. Cas. No. 5,722, the invoice was made out so as to carry out the prices of certain linens in gross, with a credit underwritten, "Deduct discount allowed for cash, 7½ per cent." The importers claimed the right to enter the goods at the invoice price, less the discount, as being the true market value abroad. While the appraisers declared the invoice to be correct as made out, they nevertheless added a discount of 5 per cent. as part of the market value, not, as they stated, according to their own judgment as appraisers, but in accordance with the direction of the collector, which was made in obedience to instructions from the Secretary of the Treasury. It was held by the court that the increase of the invoices, 5 per cent. in amount, in the manner in which it was done, was without authority of law. In Tryon v. Hartranft (C. C.) 31 Fed. 443, a verified invoice of goods contained a statement that the value of the cartons, coverings, etc., of the merchandise was included in the invoice value; and at the time of entry the importer wrote on the invoice the separate value of the cartons, coverings, etc. Upon construing this invoice at the time of liquidation, the collector exacted duties on the value of all the boxes, coverings, etc., at the same rate as that applicable to their contents. The court reversed his action, holding that duty could not be exacted on the entire invoice value, but must be charged on such value, less the value of the cartons, coverings, etc. This decision was followed by the board in Maas' Case, G. A. 3,824, T. D. 17,949.

The foregoing decisions all presented instances where the collector, upon an

inspection of the invoice, had improperly construed it; and in each case his action was reversed by the court upon the face of the record.

In a recent decision (T. D. 24,375, April 23, 1903), the Treasury Department has considered this whole question, and has instructed collectors of customs that the disallowance of commissions is a function of appraising officers, and not of collectors. The following language was used in this decision: "The basis of the dutiable value is the foreign market value as defined in section 19 of the act of June 10, 1890, c. 407, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924], which, unlike section 2907 of the Revised Statutes, repealed by the customs administrative act, does not include commissions as dutiable items. The determination of the question whether any such item charged in an invoice is a bona fide commission rests primarily with the appraiser and ultimately with the Board of General Appraisers. If the appraiser finds that the so-called commission is in fact a deduction made from the market value by the manufacturer or the seller for the purchase of goods from himself, and to that extent makes the invoice price of the merchandise less than its actual foreign market value, the item may be disallowed by the appraiser under section 10 of said act. 26 Stat. 136 [U. S. Comp. St. 1901, p. 1922]. See T. D. 12,008, G. A. 921, of October 6, 1891. Should the importer be dissatisfied with this action of the appraiser, he may call for a reappraisement under section 13 of that act. See T. D. 16,531, G. A. 3,249, of September 17, 1895, and T. D. 16,646, G. A. 3,291, of November 18, 1895. On the other hand, if the collector should be of the opinion that the appraiser erred in treating the item as a commission, he may order a reappraisement of the merchandise." This decision also expressly modifies decision 23,716, on which the collector based his action.

The remedy of the collector in this case was, in our judgment, to call for a reappraisement of the goods if he was dissatisfied with the conclusion reached by the local appraiser to the effect that the foreign market value of the goods was the entered value, from which the importer had excluded the item of commission.

The case at bar is distinguishable from Neahr's Case, G. A. 5,221, T. D. 24,037, decided October 31, 1902, because the testimony taken in that case showed that the charge for commissions was fictitious, and that no commissions were in fact paid. There was nothing, therefore, to show that the item was not properly a part of the dutiable or invoice value.

The protest is sustained, and the decision of the collector reversed, with instructions to reliquidate the entry.

Fischer, General Appraiser. I fully concur in the foregoing opinion, holding that the item of commission on the invoice is nondutiable, and involves a question rather of appraisement than of mere classification. Any other conclusion, in my judgment, would not be in harmony with the decision of Mr. Justice Story in the case of United States v. May, 26 Fed. Cas. 1224, or with the intent of the customs administrative act or the customs practice which has immemorially prevailed, and has been more recently readopted in treasury decision (T. D. 24,375) of April 23, 1903, cited in the opinion.

Waite, General Appraiser (dissenting). I am compelled to dissent from the conclusions of the majority of the board in this case. The question here is as to whether the collector, in determining the invoice value under the law, has a right to add to the amount purporting to be the price of the merchandise an item of commissions appearing in the invoice. The local appraiser returned the invoice value of the merchandise, exclusive of the commissions, as correct, but the collector included the commissions in the dutiable value in liquidating the entry. It was held by this board in its decision In re Neahr & Co., G. A. 5,221, T. D. 24,037, that the provision in section 7 of the customs administrative act of June 10, 1890, 26 Stat. 134 [U. S. Comp. St. 1901, p. 1892], as amended, requiring that duties shall not be assessed upon less than the invoice or entered value of imported merchandise, necessarily invests collectors with power to determine what is the invoice value by a construction of the whole invoice; and that, where the collector adds a doubtful item in an invoice, such as an alleged commission, to the price stated for the merchandise, it will be assumed, in the absence of evidence to the contrary, that its inclusion was

necessary to arrive at the invoice value of the goods. The correctness of this principle is now questioned. It is claimed that by acting as he has in this case the collector invades the functions of the appraiser. The duties of the collector and appraiser are set forth in the law as follows (section 10, Act June 10, 1890, c. 407, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1922]): It is the duty of the appraiser "to ascertain, estimate and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported." It is the duty of the collector, or the person acting as such (section 13), "to ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law." Section 14: "The decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage) shall be final and conclusive against all persons interested therein, unless ＊ ＊ ＊." Furthermore (section 7, as amended): "The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value." From which it will be seen that it is the duty of the collector to ascertain the invoice or entered value here mentioned. It will also be seen that it is the duty of the appraiser to ascertain the market value of the commodity "as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported," etc. Section 19. In the case of U. S. v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644, the Supreme Court says, at page 20, 169 U. S., page 221, 18 Sup. Ct., 42 L. Ed. 644: "The purpose of section 13 (customs administrative act) is to afford the importer or collector the right to call for a reappraisement by a general appraiser or a board of general appraisers to review the decision of the local appraiser or a general appraiser as to the correct amount of the dutiable value of the merchandise, and is distinct and separate from the remedy by protest. Under section 7 the collector is to determine for himself the question of what is the invoice value of the goods, and in doing this he may add such charges as he considers to be dutiable; but his decision in this respect is not in the nature of an appraisement, and may be attacked by protest." In the same case the distinction between the functions of the appraiser and collector is clearly pointed out, where the court says, on page 25, 169 U. S., page 223, 18 Sup. Ct., 42 L. Ed. 644: "The appraiser found, as matter of fact, that the market value in Germany was equal to the invoice price plus the home duty, but he did not therefore include that item as a substantive item independent of the market value, and add it thereto to make dutiable value, though in ascertaining the market value in Germany he properly recognized the fact that that duty formed part of the purchase price in the markets of that country." In the discussion of this question it is important to remember that invoices of purchased, as distinguished from consigned, goods must state the actual cost of the merchandise (sections 2 and 5, Administrative Act, 26 Stat. 131, 132 [U. S. Comp. St. 1901, pp. 1887, 1889]), and that there may be a distinction between the market value, which is ascertained by the appraiser, and the price actually paid for the goods, or invoice value, which is to be determined by the collector from a consideration of all the items making the sum total of the invoice. The board made the following observations on this point in its decision in Re Neahr, supra: "Under the statute (sections 3 and 5, Administrative Act) the invoice value of purchased goods is the actual cost thereof, and this represents the minimum dutiable value, where the importer does not add to it in his entry (section 7, Id.) If the collector adds a separate, and manifestly doubtful, item in the invoice to what purports to be the invoice price of the merchandise, it will be assumed that the inclusion was necessary to arrive at the price actually paid for the goods, notwithstanding the local appraiser may have returned a lower valuation. If it were made apparent to the collector that what was really the cost of the merchandise had been split into two items for the purpose of misleading him, no other course would be open to him." It is true the goods are considered by the appraiser on the basis of the unit. This must necessarily be so from the nature of his duties. That fact, however, offers no

argument against the collector adding an item of so-called commissions where it is not in fact commissions, but an amount deducted by the seller from the total of the invoice for the purpose of reducing the dutiable value. It may be added by the collector as a segregated dutiable amount left out of the invoice value of the merchandise. The cases cited by counsel may not be construed to govern the action of the collector in this regard. If it be urged that from the nature of his calling the appraiser is much better qualified and situated to investigate the bona fides of commissions, nevertheless that cannot alter their relations to the subject-matter under the law, and such argument is without point when it is considered that the appraiser is the right hand of the collector, and his knowledge and facilities are at the command of his superior officer. In the case at bar the appraiser reported to the collector that the market value and entered value were identical. The invoice, however, as will be seen, discloses an item of £4 12s. 8d., which is designated as commission by the maker of the invoice, who is the "seller" of the goods according to the consular declaration and certificate, and the affidavit of the importer on entry. If, as it appears, this item was paid to the seller or his agent, it may be said to be prima facie dutiable as part of the invoice value. I think the collector was warranted in taking the verifications on the invoice and the importer's affidavit on entry as proof that the so-called commissions were not bona fide, but constituted a part of the seller's profit, and, being so satisfied, he was justified in adding it to the invoice value of the goods. At the same time that the appraiser reported the item of commissions as nondutiable, he also indicated as nondutiable a consular fee of 10s. 4d.; but, unlike that item, the commission cannot be said to be manifestly nondutiable, because whether it is dutiable or not depends upon whether it is part of the purchase price or a commission payable by the purchaser to his agent. I think the inference is warranted that, had it been a commission paid by the importer to some other person than the seller, it would not have been included in this invoice by the maker thereof.

In adding the alleged commission to the price stated for the goods the collector did not theoretically add to the appraised value, but merely found what he deemed the invoice value. It was a mere coincidence that the appraised value was the same as the invoice value of the goods per se. Had it differed, as it might have, and the collector added the commission to the appraised value rather than to the sum stated in the invoice as the price of the goods, it might be contended with some force that he had varied the appraisement. In the case before us no testimony was taken as to the bona fides of the commission, the importers having taken no steps to correct or refute in any way the implication of the invoice taken as a whole that the so-called commission was a sum paid to the seller or his agent. Hence it can only be concluded from the record, with the declarations of the seller and importer, that the so-called commissions are part of the seller's profit, and not allowable as commissions. It seems to me we are bound to conclude, in the absence of any further testimony upon that point, that it was not a bona fide commission, and the burden of showing that it was should rest with the importer, or the one claiming the deduction. If, however, the protestants had introduced evidence showing this item to be in fact a commission, I am nevertheless of opinion that, for the reasons expressed in my dissent from the majority opinion in board decision in Re Alexander Smith & Sons Carpet Company, G. A. 5,443, T. D. 24,721, the principle of estoppel there referred to would defeat the claim of the importer.

The protest should be overruled, and the decision of the collector affirmed.

Charles Duane Baker, Asst. U. S. Atty.
Albert Comstock, for importers.

TOWNSEND, Circuit Judge. The sole question herein is as to the right of the collector of customs, after the appraiser has appraised the goods and marked an item of commissions as nondutiable, to liquidate the entry, and add said item of commissions to the appraised value, and assess duty thereon, in the absence of any inquiry by the collector, upon a mere inspection of the invoice, without further evi-

dence to justify said addition. The majority and minority opinions of the Board of Appraisers contain such a full discussion of this question that it is unnecessary to add anything thereto. The reasoning of the majority of the board seems to be supported by the decisions of the courts and the rulings of the Treasury Department, and the decision of the board is therefore affirmed.