(C. D. 1191)

W. T. GRANT CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 7, 1949)

*Sharretts & Hillis* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Arthur R. Martoccia* and *Richard H. Welsh,* special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

RAO, Judge: In the instant case, the plaintiff seeks to recover duties alleged to have been erroneously assessed upon an importation of cotton gloves. The merchandise in issue, listed on the invoice under call No. 39322, Mfg. No. 7424¾, case Nos. 5762 and 5763, and described therein as "Ladies' Cotton Fabric Gloves," was assessed with duty at the rate of 60 per centum ad valorem, pursuant to the provisions of paragraph 915 of the Tariff Act of 1930, as gloves made of fabric knit on a warp-knitting machine. The additional duty provided for in paragraph 924 of said act was also assessed but is not here in question.

The claim in the protest relied upon herein is that the merchandise is dutiable at only 25 per centum ad valorem, pursuant to the provisions of said paragraph 915, as gloves made of woven fabric.

Paragraph 915 of the Tariff Act of 1930 provides as follows:

Gloves and mittens, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber: Made of fabric knit on a warp-knitting machine, 60 per centum ad valorem; made of fabric knit on other than a warp-knitting machine, 50 per centum ad valorem; made of woven fabric, 25 per centum ad valorem.

When this case was called for trial, counsel for the importer offered in evidence the invoice, entry, and all other official papers. These were received over the objection of Government counsel to the statements contained in the invoice. No oral testimony was taken.

Certain statements and data appearing on the invoices and other official papers are claimed by the plaintiff to be of moment in this case. We will therefore refer to them in some detail. At the bottom of page 5 of the invoice, on which page the disputed items are listed,

there is the following remark: "WOVEN PART of these Article CHIEF VALUE, as per separate statement." There follows the typewritten name of the manufacturer and the illegibly written name of some individual. The next page contains the separate statement of itemized figures as to component material of chief value, subscribed with the same typewritten and handwritten names as the preceding page. The entire invoice was verified in the usual form before the United States consul.

Page 5 also contains certain red-ink notations. These include a bracketing of the involved case numbers, the figures "60/10," "P. 915/924," the phrase "Warp Knit," and the initials "R. A." There is also a blue-ink figure of "55%" appearing under Mfg. No. 7424¾.

It further appears from the official papers that the items in dispute were contained in but 2 of 13 cases included in the invoice and that neither of the involved cases was designated by the collector for examination nor actually examined. The collector apparently accepted the phrase "Warp Knit" as constituting the appraiser's advisory classification because he liquidated the entry under paragraph 915, *supra*, at 60 per centum ad valorem.

Plaintiff herein contends in its brief that the presumption of correctness attaching to the collector's classification has been "seriously weakened," if not destroyed, by the failure of the appraiser to examine the merchandise imported in cases numbered 5762 and 5763 and that therefore the statements contained on the invoice are sufficient to establish *prima facie* that the component material of chief value in the gloves in question is woven fabric and not fabric knit on a warp-knitting machine.

The importer argues that since the merchandise in issue was not examined and no sample thereof was retained, neither the appraiser nor the collector found, or could have found, as a fact, that the knit portion of the gloves was the component material in chief value. This being so, it is claimed that the collector's classification was not in conflict with the invoice description and that therefore the latter has evidentiary value sufficient to prove that the woven portion of the gloves was the component material of chief value, and hence to overcome the presumption of correctness of the collector's classification.

The Government, on the other hand, urges that the collector's classification is presumed to be correct; that implicit in such classification is the presumption that every fact necessary to sustain such classification was found to exist; and that the invoice description was not, in and of itself, sufficient to rebut the presumption of correctness attaching to the collector's classification.

At the outset it must be noted that although the plaintiff asserts that, since there was no examination of cases numbered 5762 and

5763, neither the appraiser nor the collector could have found as a fact that the knit portion of the gloves was the component material of chief value, it is not alleged that such failure was erroneous or constituted a violation of law. Nor could such assertion have been validly made, in the light of the compliance by the customs officials with the provisions of section 499 of the Tariff Act of 1930, with respect to designation and examination of imported packages.

The instant importation consisted of 13 cases of cotton gloves. The collector designated two of such cases for examination by the appraiser's office and the two cases designated by the collector were in fact examined. Consequently, the acts of the collector and the appraiser were in full compliance with the provisions of section 499. This fact is of the utmost significance in the instant case and distinguishes it from the cases relied upon by the plaintiff to sustain its contention that statements contained on an invoice possess evidentiary value sufficient to establish a *prima facie* case.

There have been many instances in the past when this and other courts have held that invoice statements have some evidentiary value, notably, in the cases of *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400; *Joseph E. Seagram & Sons, Inc.* v. *United States,* 30 C. C. P. A. (Customs) 150, C. A. D. 227; *Greely* v. *Thompson & Forman,* 10 How. 225, 13 L. ed. 397; *Sprouse-Reitz Co., Inc.* v. *United States,* 8 Cust. Ct. 159, C. D. 596. While in all of these cases it was held that the invoice statements presented sufficient evidence for a determination of the issue respectively involved therein, in each instance there was first a finding from facts or evidence *dehors* the invoice that the presumption of correctness attaching to the collector's classification had been overcome. There being no presumption and no other evidence available, the invoice descriptions were accepted as sufficient to sustain the respective importer's claim.

For example, in *United States* v. *Bloomingdale Bros. & Co., supra,* between the time of the filing of the protest and the hearing thereon before the Board of General Appraisers (now the United States Customs Court), it had been held that goods of the kind there in controversy were more specifically provided for as woven-figured cotton cloth, the classification claimed, than as jacquard-figured manufactures of cotton, as classified by the collector. Accordingly, when the protest came on for hearing, it had already been determined that the collector's classification was erroneous and that the presumption of correctness attaching thereto no longer existed. In determining the proper rate of duty assessable on woven-figured cotton cloth, it became material to ascertain the yarn count of the cloth, a factor which was not an element in the collector's classification. The court held that where no sample was available, the figures contained in the

invoice with respect to yarn count could be accepted as sufficient evidence thereof.

Similarly, in the *Seagram* case, *supra*, which involved an importation of whisky and the gauging thereof, the court's ruling that the invoice statements were some evidence of the correct quantity of the liquor was predicated upon a finding that the presumption of correctness of the collector's classification failed. It was first held that the method used by the customs gaugers to determine the quantity of whisky imported was improper and that there had been no legal gauging or measurement of any kind by the customs officials. It therefore followed that the presumption of correctness attaching to the action of the collector was overcome and the court accepted as the only basis for ascertaining the amount of whisky imported, the statements contained in the invoices.

An analysis of the other cases hereinabove cited will likewise show that in each instance it was first established by evidence outside of the invoice that the collector's classification was erroneous, before resort was had to the invoice statements. The rule of law to be derived from the foregoing cases was stated by Judge Jackson in denying the petition for rehearing in *Joseph E. Seagram & Sons, Inc. v. United States, supra*, to be as follows:

* * * under certain circumstances it has been judicially held by this court that the invoice is some evidence. The presumption of correctness attaching to the collector's action having been overcome *without consideration of the invoice as evidence against the presumption, said invoice was the only evidence before us as to the quantity of liquor imported.* [Italics ours.]

In the instant case, there was no independent evidence to establish that the collector's classification was erroneous. Plaintiff seeks to fabricate such evidence from the fact that the merchandise in the two involved packages did not come before the appraiser for examination and the inference that the appraiser could not therefore have ascertained that the knit portion of the gloves in question was the component material of chief value. This fact, and the inference therefrom, are not sufficient, standing alone, to rebut the presumption of correctness inherent in the collector's classification.

The collector's classification rests upon the presumption that he has found the existence of all facts necessary to sustain his decision. *United States v. I. Magnin & Co., Inc.*, 21 C. C. P. A. (Customs) 77, T. D. 46394; *United States v. Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309; *United States v. Albers Bros. Milling Co. et al.*, 35 C. C. P. A. (Customs) 119, C. A. D. 380. This presumption may be invoked even though it appears that the collector has never seen the imported merchandise, for the collector is not required to make an independent investigation to ascertain the nature and quality of the imported merchandise. He may rely entirely upon

the appraiser's description. *United States* v. *Albers Bros. Milling Co. et al., supra.*

This latter case was an appeal by the Government from a judgment sustaining 19 protests of the importers therein. The merchandise was classified by the collector as seaweeds, manufactured, under paragraph 1540 of the Tariff Act of 1930. It was claimed to be free of duty under the provisions of paragraph 1705 of said act as kelp. The deputy collector who had been called as a witness in that case stated that it was the collector's practice to accept the examiner's description of such merchandise as seaweeds, manufactured, without inquiring into the question of what kind of seaweed it was. He did not, however, specifically state that such practice was followed with respect to those entries before the court. The court there held that it was not incumbent upon the collector to investigate the report of the appraiser in order to make a valid classification, and that when the collector accepted the advisory classification of the appraiser, it became the collector's own decision and all findings essential to that decision could be presumed to have been made and made correctly. Hence, even though the invoices in that case described the imported merchandise variously as kelp, seaweed (kelp) meal, and kelp meal, etc., and it did not affirmatively appear that the appraiser made any effort to ascertain whether the merchandise was in fact kelp, it was held that the invoice descriptions were insufficient to rebut the presumption of correctness attaching to the collector's classification. In so holding, the court, through Judge Jackson, stated (p. 121):

The law is well settled that the invoice description of imported goods is not of itself sufficient to overcome the presumption of correctness attaching to the classification thereof by the collector. *United States* v. *Ocean Brokerage Co.,* 11 Ct. Cust. Appls. 38, T. D. 38648; *Oakland Food Products Co. et al.* v. *United States,* 32 C. C. P. A. (Customs) 28, C. A. D. 281.

In the *Oakland Food Products* case, *supra,* we held that the invoice description is but one of the items to be considered by the collector in classifying imported merchandise, but that in a dutiable sense it does not determine the nature or status of the goods. We commented upon the incongruous situation that would result if the presumption of correctness attaching to the collector's action would fall by merely introducing the invoice in evidence, as establishing a *prima facie* case. If that could properly be done, the burden of going forward with the evidence would be thrown on the Government to prove the correctness of its own classification without any further evidence on the part of an importer to establish not only that the collector's classification was wrong but that his contention, as claimed in his protest, is right.

See also *Imperial Gem Syndicate* v. *United States,* 21 Cust. Ct. 126, C. D. 1140.

The case of *United States* v. *National Aniline and Chemical Co.,* 3 Ct. Cust. Appls. 10, T. D. 32287, presents a situation very similar to that involved in the case at bar. The merchandise therein involved consisted of a chemical compound known as thymol. It was classified

under paragraph 3 of the Tariff Act of 1909 as a chemical compound in the preparation of which alcohol had been used. It was claimed to be dutiable under the same paragraph as a chemical compound, not containing alcohol. The sole question in that case was whether the importer had produced evidence sufficient to overcome the presumption of correctness attaching to the collector's classification. It appears that there was a document annexed to the consular invoice which contained a statement of the foreign manufacturer that no alcohol was used in manufacturing the product. This statement was made before the vice consul. In rejecting this statement as insufficient to rebut the presumption of correctness of the collector's classification, the court stated (p. 17):

\* \* \* it is sufficient so far as relates to any issue here to say that the view most favorable to the importers is that Exhibit 1 purports to be a certificate of the maker of thymol that no alcohol was used in the preparation thereof by him. It was attached to the consular invoice and therefore was presumably considered by the collector in classifying the merchandise. To hold that in this court it has sufficient probative force to overcome the presumption of the correctness of the classification of the collector is to give to an unsworn *ex parte* statement all the probative force that a deposition under oath with opportunity afforded for cross-examination of a witness would be entitled to receive.

That in substance is the situation which obtains in the instant case. Attached to the invoice is a statement of the manufacturer of this merchandise to the effect that the woven fabric rather than the knit fabric was the component material of chief value in the imported gloves. There are, in addition, certain figures purporting to sustain that statement. Both the statement and the calculations were presumably before the appraiser when he made his advisory classification and before the collector when he adopted that classification as his own.

Despite the manufacturer's statement that the woven fabric was in chief value, the collector classified the instant merchandise under that portion of paragraph 915 of the Tariff Act of 1930, *supra*, which provides for gloves made of fabric knit on a warp-knitting machine. In so doing, he must be presumed to have rejected the invoice declarations and to have found that the knit portion rather than the woven portion was the component material of chief value. Those declarations may not now be advanced to upset the collector's classification. The law is too well settled to require the citation of any additional authority that invoice descriptions alone are not sufficient to rebut the presumption of correctness inherent in the collector's classification.

Counsel for the importer cites the case of *Greely* v. *Thompson & Forman, supra,* as establishing a rule of law which he deems to be contrary to that applied herein and states that that authority has never affirmatively been called to the attention of this or our appellate

courts in the cases involving this question. He refers particularly to that portion of the decision reading (p. 239):

Besides this, it would be unreasonable to overturn the invoices and oaths of importers, unless by a personal inspection and examination;   *   *   *

Counsel argues from this quotation that "the Supreme Court regards the invoice as substantial factual evidence of the facts alleged therein, *at least where no personal inspection and examination of the merchandise was made by customs officers in compliance with the law.*" If the quoted statement stood alone, there might be some basis for counsel's interpretation of the language thus used, but an analysis of the case reveals, among other things, that the appraisers swore that they had examined and inspected the merchandise there involved, whereas, the record showed that one of the merchant appraisers never saw the imported product and that one of the permanent appraisers did not examine, inspect, or see the same. The law in effect at that time required a personal inspection and examination by both merchant appraisers and permanent appraisers. Hence, it is quite apparent that the statute governing examination and inspection had not been complied with and that therefore the collector's classification was not presumptively correct. Failure of the appraisers to make the inspection and examination required by the applicable statute, left the invoices and oaths of the importers as the only evidence in the case. Thus, the holding in the case is entirely consistent with the decisions hereinabove cited to the effect that statements contained in an invoice are not in themselves sufficient evidence to rebut the presumption of correctness of the collector's classification. Their value as evidence materializes only when the presumption of correctness has been overcome by some other independent evidence.

We find nothing in the record which may be considered as evidence sufficient to overcome the presumption in favor of the collector's classification. All claims of the plaintiff are therefore overruled. Judgment will be entered accordingly.