UNITED STATES *v.* ALBERS BROS. MILLING CO. ET AL. (NO. 4563)[1]

[1] C. A. D. 380.

United States Court of Customs and Patent Appeals, January 27, 1948

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* and *George R. Tuttle* of counsel) for appellees.

[Oral argument December 2, 1947, by Mr. Donohue and Mr. George R. Tuttle]

Before Garrett, Presiding Judge, and Hatfield, Jackson, and O'Connell, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, rendered pursuant to its decision, C. D. 1027, sustaining 19 protests of appellees. The appeal presents the same issue as that appearing in the cases of *United States* v. *Geo. S. Bush & Co., Inc., et al.*, 35 C. C. P. A. (Customs) 124, C. A. D. 381, and *United States* v. *California Milk Producers Assn. et al.*, 35 C. C. P. A. (Customs) 126, C. A. D. 382, decided concurrently herewith.

During the argument it was stated by counsel for appellees that the goods identified by entries 2378, 2847, and 2934 in protest 968008-G/15992 were actually classified pursuant to section 1558, rather than under section 1540 as reported by the appraiser, and he therefore conceded that the judgment with respect to those entries should be reversed. It will be apparent in view of our conclusion why it is unnecessary to make further reference to the concession of counsel.

The imported merchandise involved in this appeal was classified by the Collector of Customs at Seattle as seaweeds, manufactured, under paragraph 1540 of the Tariff Act of 1930.

It was claimed in the protests that the merchandise was properly free of duty as "Kelp" under paragraph 1705 of the act.

The paragraphs read as follows:

PAR. 1540. Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed, 10 per centum ad valorem.

PAR. 1705. Kelp.

Appellees had the burden of establishing that the classification by the collector was not proper and also that the involved merchandise was in fact kelp.

The record is meager and comprises the testimony of a deputy collector of the port of Seattle, that of a cereal chemist employed by

appellee, Centennial Flouring Mills Co., reports of the collector, appraiser's answers, and the invoices for the involved merchandise upon which the word "kelp" appears in expressions such as "seaweed (kelp) meal," "kelp meal" etc.

The deputy collector testified that the examiner of merchandise, pursuant to his statutory duties, advisorily classified the merchandise by checking on the invoices in red ink the figures 1540/10, which indicate advisory classification under paragraph 1540 and assessment of duty at 10 per centum ad valorem. The witness also stated he was acquainted with the practice of the Collector of Customs at the port of Seattle at the time the entries were liquidated; that when liquidations were made with respect to merchandise that had been advisorily classified, it was the collector's practice "to take such an action by the examiner to be indicative that he found the merchandise to be seaweeds, manufactured, subject to duty at 10 percent under paragraph 1540"; and that the collector would liquidate such entries and assess duty on the imported merchandise accordingly "without inquiring into what kind of seaweed it was."

The testimony of the cereal chemist was held by the trial court to be of no probative value, and properly so we think, for the reason of his admission that he did not know whether the involved merchandise was kelp or other seaweed.

The trial court was of opinion that the only evidence tending to identify the goods as claimed was the term "kelp," which in one form or another appeared on the invoices, and concluded that those designations considered in connection with the testimony of the deputy collector were sufficient to warrant judgment for appellees.

The action of the court was based upon testimony that the collector made his classification without inquiring into the correctness of the advisory classification. The court properly noted that the presumption of correctness attaching to the collector's classification is rebuttable, and that such presumption in turn is based upon the presumption that the collector has found every fact to exist that is necessary to sustain his classification, citing *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309. The court was of opinion, because there was testimony by the deputy collector, that it was the practice of the collector to classify imported merchandise, such as is here involved, in accordance with the advisory classification "without inquiring into what kind of seaweed it was," and that the presumption of correctness attaching to his classification was, therefore, destroyed.

The law is well settled that the invoice description of imported goods is not of itself sufficient to overcome the presumption of correctness attaching to the classification thereof by the collector. *United States* v. *Ocean Brokerage Co.*, 11 Ct. Cust. Appls. 38, T. D. 38648;

*Oakland Food Products Co. et al.* v. *United States*, 32 C. C. P. A. (Customs) 28, C. A. D. 281.

In the *Oakland Food Products* case, *supra*, we held that the invoice description is but one of the items to be considered by the collector in classifying imported merchandise, but that in a dutiable sense it does not determine the nature or status of the goods. We commented upon the incongruous situation that would result if the presumption of correctness attaching to the collector's action would fall by merely introducing the invoice in evidence, as establishing a *prima facie* case. If that could properly be done, the burden of going forward with the evidence would be thrown on the Government to prove the correctness of its own classification without any further evidence on the part of an importer to establish not only that the collector's classification was wrong but that his contention, as claimed in his protest, is right.

The trial court noted that it was settled law when the statement on the invoice and the collector's classification contradict each other, that the former of itself could not overcome the presumption of correctness attaching to the collector's action. However, the court sought to distinguish that doctrine appearing in the *Ocean Brokerage Co.* case, *supra*, and which is reiterated in the *Oakland Food Products Co.* case, *supra*, by stating that in the instant case the classification was made without the collector inquiring into the matter as to whether or not the imported merchandise was kelp or another seaweed. In other words the court held that as a matter of law the classification by the collector was not presumptively correct.

In our opinion, with the exception of protests No. 833202–G and No. 833203–G, hereinafter discussed, appellees have not sustained their burden of establishing that the imported seaweed was in fact kelp. While it is true that the deputy collector testified that the collector, as a matter of practice, did not inquire as to the kind of seaweed before him for consideration, such practice was not testified to have been followed in the instant case. Therefore, it appears to us, as is contended in the brief of appellant, that the "general practice" is not relevant to the issue here and that appellees have failed to sustain their statutory burden.

We do not agree with the holding of the trial court that as a matter of law the collector was obliged to investigate the report of the appraiser in order to make a valid classification.

In that connection we call attention to section 500 of the act, which in defining the duties of the appraiser and his subordinates, including examiners, sets out, among other things, that it must be ascertained whether or not the merchandise has been truly and correctly invoiced; that the merchandise must be so described that the collector may determine the dutiable classification thereof; and that the report of

the appraiser must be made to the collector. Such duties, as are laid down in section 500, are positive and their performance is a condition precedent to a valid appraisement. Those duties were carried out in the instant case.

Pursuant to section 502 of the Tariff Act of 1930 the Secretary of the Treasury promulgated the Customs Regulations of 1937 which were in effect at the time the involved entries were liquidated. In article 818 (c) of the regulations it is directed that "The collector should determine whether the advisory classification of the appraiser is correct, and if it is not, he should so inform that officer." It provides that if the merchandise has been described in tariff terms and with reference to the paragraph under which the appraiser's advisory classification is set out, "it then becomes the duty of the collector to decide whether the advisory classification is correct." We think it plain that no personal or individual investigation by the collector is contemplated under the article.

If in the opinion of the collector the advisory classification is incorrect, he must so inform the appraiser. It seems to us that the regulation indicates that the collector may not disregard the advisory classification, but of course he is not bound thereby. That is settled law. *Oakland Food Products* case, *supra*. But where, as in the instant case, the collector adopts such description it is made his own decision. Therefore, all findings essential to his classification of the merchandise are presumed to have been made.

We find nothing in the law or regulations made pursuant thereto that the collector must make inquiry as to the correctness of the advisory classification of the appraiser. He is not the examining officer, and he is not obliged to verify the findings of the appraiser by independent investigation. It is the duty of the appraiser to examine, make his finding and describe the merchandise in his report to the collector.

Protest 833202–G was filed August 10, 1936. On September 24, 1936 the report of the collector, signed by the chief liquidator, in describing the merchandise covered by the protest, stated as follows:

The merchandise is kelp meal and was classified as seaweed, processed, at 10% ad valorem under Par. 1540 of the Tariff Act of 1930.

The timely report of the collector clearly agreed with the claim in the protest that the merchandise was in fact kelp meal. While it was classified as "seaweed, processed," it must be remembered that kelp is a seaweed, and, therefore, kelp meal must be considered as kelp, processed, a form of kelp. The description of the merchandise by the collector is identical with the claim made in the protest. Since there is no contradiction between the two, that protest was properly sustained by the trial court in this case.

We have identical facts with respect to protest No. 833203–G. Accordingly, the judgment with respect to that protest should likewise be affirmed.

Seemingly, determination on the protests involved in this case and in appeals No. 4564 and No. 4566 were suspended pending the final decision in the case of *Centennial Flouring Mills Co. et al.* v. *United States*, 29 C. C. P. A. (Customs) 264, C. A. D. 200. We held there that Congress intended kelp, whether crude or manufactured, so long as it remained kelp, should be free of duty under paragraph 1705, *supra*. In that case the importation consisted of "ground kelp" and was conceded to be kelp by counsel for the Government at the time of oral argument before us. In the instant case, with respect to protests No. 833202–G and No. 833203–G, that case is controlling. With respect to the remaining protests, we hold that appellees have not proved that the merchandise is in fact a form of kelp and, therefore, as to those protests the judgment of the United States Customs Court must be reversed.

For the reasons herein given, the judgment of the United States Customs Court is *reversed* with the exception as to protests No. 833202–G and No. 833203–G. As to those two protests, the judgment is *affirmed*.